1   DEBORAH YOON JONES (State Bar No. 178127)
    ADRIENE PLESCIA LYNCH (State Bar. No. 259100)
2   **ALSTON & BIRD LLP**
    333 South Hope Street, Sixteenth Floor
3   Los Angeles, California 90071
    Telephone: (213) 576-1000
4   Facsimile: (213) 576-1100
    adriene.lynch@alston.com
5
    Attorneys for Defendants **GMAC MORTGAGE, LLC**
6   and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
7
8                       **UNITED STATES DISTRICT COURT**
9                       **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12   IGNACIO SERRANO, an individual,          Case No.:
13                    Plaintiff,              **SACV09-0861 DOC (ANx)**
14        v.                                  **NOTICE OF REMOVAL TO
                                              UNITED STATES DISTRICT
15   GMAC MORTGAGE, an entity whose form      COURT UNDER 28 U.S.C. § 1441(b)**
     is unknown; ALLIANCE TITLE, an entity
16   whose form is unknown,; MORTGAGE
     ELECTRONIC REGISTRATION
17   SYSTEMS, INC., a Delaware Corporation,
     and DOES 1 through 50, inclusive,
18
                     Defendants.
19
20
21
22
23
24
25
26
27
28

FILED

2009 JUL 27  AM 11: 32
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT, CENTRAL**
2  **DISTRICT OF CALIFORNIA:**

3         **PLEASE TAKE NOTICE** that Defendants GMAC Mortgage, LLC,
4  improperly named in suit as GMAC Mortgage ("GMAC"), and Mortgage Electronic
5  Registration Systems, Inc. ("MERS") (collectively "Defendants"), hereby remove the
6  above-titled action from the Superior Court of the State of California for the County of
7  Orange ("State Court"), where the above-titled action ("Action") was filed, to the
8  United States District Court for the Central District of California.

9         In support of this Notice, Defendants allege as follows:

10
11                   **TIMELINESS OF REMOVAL**

12         1.    On or about June 2, 2009, Plaintiff Ignacio Serrano ("Plaintiff")
13  commenced the Action in the State Court by filing a complaint ("Complaint") entitled
14  "*Ignacio Serrano v. GMAC Mortgage, Alliance Title, Mortgage Electronic*
15  *Registration Systems, Inc., and Does 1 through 50, inclusive*" and bearing Orange
16  County Superior Court Case No. 30-2009-00123933.   The Complaint alleges the
17  following five purported causes of action: (1) Breach of Written Contract; (2) Breach
18  of Covenant of Good Faith and Fair Dealing; (3) Statutory Violations of Civil Code
19  Section 2923.6; (4) Injunctive Relief; and (5) Declaratory Relief.

20         2.    Plaintiff served both GMAC and MERS with the Summons and
21  Complaint on June 26, 2009.[1]   Defendants have no knowledge regarding service of
22  process on Alliance, and no proof of service has been filed to indicate that Alliance
23  has been served.[2]   Therefore, it is not necessary to obtain the consent of Alliance for
24  removal of this Action.   Accordingly, this Notice of Removal, filed on July 27, 2009,
25  is timely filed pursuant to 28 U.S.C. §1446(b).

26
27  _____
28  [1] Plaintiff filed a Proof of Service with the Superior Court on July 7, 2009.
[2] The California Business Portal of the Office of the Secretary of State reflects that
Alliance's registered agent resigned in February 2009.

**VENUE**

3.     Venue lies in the Central District pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(c)(2).  This action was originally brought in the Superior Court of the State of California, County of Orange.

**DIVERSITY JURISDICTION**

4.     This is a civil action over which this Court has original jurisdiction, and one in which Defendants may remove pursuant to the provisions of 28 U.S.C. §§ 1332(a) and 1441(b), in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states as described further below.

5.     **Plaintiff's Citizenship**.    Defendants are informed that Plaintiff is a citizen of the State of California.

6.     **Defendants' Citizenship**.    GMAC is a Delaware limited liability company.  For purposes of diversity of citizenship jurisdiction, the citizenship of a limited liability company is based on that of the members of the limited liability company.  GMAC's members are not domiciled in California.  MERS is a Delaware corporation and maintains its principal place of business in Delaware.

7.     **Individual Defendant Alliance Title Is A Sham Defendant Who Must Be Disregarded for Removal Purposes.**    Plaintiff also names as a defendant, Alliance Title, a now defunct company, which was incorporated in California. Alliance ceased operations in December 2007.  The citizenship of Alliance should be disregarded for purposes of determining jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b) on the ground that Alliance is a "sham" defendant, fraudulently joined as a party to this action, and accordingly must be disregarded for removal purposes.  A non-diverse party named in the State Court action may be disregarded if the Federal Court determines that party's joinder is a "sham" or "fraudulent" so that no possible cause of action has been stated against that party.  *Morris v. Princess*

1  *Cruises, Inc.* (9th Cir. 2001) 236 F.3d 1061, 1067.   The test for fraudulent joinder is
2  whether there is any possibility that a plaintiff could prevail against the sham
3  defendant on the face of the complaint.  *Id.* at 1068.

4        Here, Plaintiff has not and cannot establish actionable conduct against
5  Alliance on the various claims asserted in the Complaint.   By virtue of naming all
6  "Defendants" in the First through Fifth Causes of Action of his Complaint, Plaintiff
7  asserts all of the claims as against Alliance.   The allegations of the Complaint,
8  however, are based on circumstances arising out of Plaintiff's attempt to obtain a loan
9  modification from GMAC beginning in May 2009.   (Compl. ¶ 18).   Plaintiff's
10  allegations are based solely on Plaintiff's belief that GMAC failed to properly enter
11  into a loan modification agreement with him.   (*Id.* at ¶¶ 23, 27, 30, 32, and 37).
12  Alliance ceased operations in December 2007 and had no involvement in the loan
13  modification request and decision process.   Instead, Alliance's involvement with
14  Plaintiff's loan was limited to that of serving as the trustee named in the Deed of
15  Trust. Based on the foregoing, there is no possibility that Plaintiff will prevail on any
16  of these causes of action against Alliance, and the Court should disregard Alliance for
17  purposes of diversity of citizenship jurisdiction.

18        8.    **Amount In Controversy Exceeds $75,000.**

19             (a)    **Allegations of the Complaint.**

20        Plaintiff seeks compensatory damages, attorneys' fees, costs, and a
21  reduction in principle of his original loan principle from $234,203.48 to $133,000.00.
22  Thus, Plaintiff seeks a reduction of $101,203.48.   This amount alone exceeds the
23  $75,000 jurisdictional limit.   Taking into consideration all of Plaintiff's allegations
24  and claims, the Court may easily find that the amount in controversy exceeds $75,000.

25        9.    **Conclusion.**  Based on the foregoing, this Court has jurisdiction over the
26  Action under the provisions of 28 U.S.C. § 1332, in that this Action involves a
27  controversy which exceeds the value of $75,000.00, exclusive of interest and costs,

28

1    and is between citizens of different States.   Accordingly, this Action is properly

2    removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446.

3

4                         **<u>NOTICE TO STATE COURT</u>**

5         10.   A true and correct copy of this Notice of Removal has been served on the

6    Plaintiff and filed with the Clerk of the Superior Court of the State of California,

7    County of Orange, as required by law.

8

9    DATED:  July 27, 2009          Respectfully submitted,

10                             DEBORAH YOON JONES
                            ADRIENE PLESCIA LYNCH

11                             **ALSTON & BIRD LLP**

12

13                      _____
                           Adriene Plescia Lynch

14                      Attorneys for Defendants **GMAC MORTGAGE,
                     LLC** and **MORTGAGE ELECTRONIC**

15                      **REGISTRATION SYSTEMS, INC.**

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF ADRIENE P. LYNCH

I, Adriene P. Lynch, declare:

1.    I am an associate at Alston & Bird LLP, attorneys of record for Defendants GMAC Mortgage, LLC, improperly named in suit as GMAC Mortgage, and Mortgage Electronic Registration Systems, Inc. ("Defendants) in this action.  I make this Declaration in support of the Notice of Removal.  I have personal knowledge of the following facts and if called as a witness would and could testify competently thereto.

2.    Attached hereto as **Exhibit A** is a true and correct copy of plaintiff's Summons and Complaint filed in this matter in the Superior Court of California for the County of Orange.

3.    I am informed that Defendants first received a copy of the Summons and Complaint on or about June 26, 2009.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 27th day of July 2009, at Los Angeles, California.

_____
Adriene P. Lynch

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GMAC MORTGAGE, an entity whose form is unknown;
ALLIANCE TITLE, an entity whose form is unknown;;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a
Delaware Corporation, and DOES 1 through 50,
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
IGNACIO SERRANO, an individual,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUN 02 2009

ALAN CARLSON, Clerk of the Court

BY ___H. POTTER___ , DEPUTY

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> ORANGE COUNTY SUPERIOR COURT <br> 700 CIVIC CENTER DRIVE WEST <br><br> SANTA ANA, CALIFORNIA 92702-1994 <br> CENTRAL JUSTICE CENTER | **CASE NUMBER:** <br> *(Número del Caso):* <br> **30-2009** <br> **00123933** <br><br> **JUDGE FRANZ E. MILLER** <br> **DEPT. C14** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Moses S. Hall, Esq.                714-738-4830
LAW OFFICE OF MOSES S. HALL
Moses S. Hall, Esq.
Fullerton, California 92831

DATE: **JUN 02 2009   ALAN CARLSON**   Clerk, by _____**HEATHER POTTER**_____ , Deputy
*(Fecha)*                      *(Secretario)*                          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* GMAC Mortgage, An entity whose form is unknown

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

6

1  Moses S. Hall, Esq., (SBN 153759)
   **LAW OFFICE OF MOSES S. HALL**
2  2651 E. Chapman Avenue, Suite 110
   Fullerton, California 92831
3  Telephone: (714) 738-4830
   Fax: (714) 992-7916
4  Attorney for Plaintiff,
5  IGNACIO SERRANO

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUN 02 2009

ALAN CARLSON, Clerk of the Court

BY _____ M. POTTER _____, DEPUTY

6        SUPERIOR COURT OF THE STATE OF CALIFORNIA

7          FOR THE COUNTY OF COUNTY OF ORANGE

8              CENTRAL JUSTICE CENTER        **30-2009**

                                             **00123933**

9  IGNACIO SERRANO, an individual,        )  Case No.:
                                          )
10        Plaintiff,                       )  UNLIMITED CIVIL CASE
                                          )
11                                         )  COMPLAINT FOR:
   vs.                                     )
12                                         )
13  GMAC MORTGAGE, an entity whose form    )  1. BREACH OF WRITTEN CONTRACT;
   is unknown; ALLIANCE TITLE, an entity   )  2. BREACH OF COVENANT OF GOOD
14  whose form is unknown,; MORTGAGE       )     AND FAIR DEALING;
   ELECTRONIC REGISTRATION                 )  3. STATUTORY VIOLATION OF CIVIL CODE
15  SYSTEMS, INC., a Delaware Corporation, )     SECTION 2923.6
   and DOES 1 through 50, inclusive,       )  4. INJUNCTIVE RELIEF;
16                                         )  5. DECLARATORY RELIEF
17        Defendants.                      )
                                          )    **JUDGE FRANZ E. MILLER**
18                                         )        **DEPT. C14**
                                          )
19                                         )
                                          )
20  _____ )

21

22        Plaintiff  IGNACIO SERRANO (hereinafter, "Plaintiff") complains of Defendants, and

23  each of them, as follows:

24                        **COMMON ALLEGATIONS**

25  **I. Identity of the Parties**

26        1.  At all relevant times herein, Plaintiff was an individual residing in the County of

27  Orange, State of California.

28        2.  Defendant GMAC MORTGAGE (hereinafter "GMAC") is an entity whose form is

Complaint                           1

1  unknown to Plaintiff, but which at all relevant times doing business as a real estate financial

2  lender in the State of California.

3      3. Defendant ALLIANCE TITLE (hereinafter, "ALIANCE") is an entity whose form is

4  unknown to Plaintiff, but which at all times relevant was the trustee of the mortgage and home

5  equity loan agreement between Plaintiff and Defendant GMAC.

6      4. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is a

7  Delaware corporation doing business in California and which was at all relevant times a

8  beneficiary under the mortgage between Plaintiff and Defendant GMAC.

9      5. Within this judicial district, the written contract, upon which this action is based, was

10  formed and performance was thereon due within this judicial district.

11      6. The true names or capacities, whether individual, corporate, associate or otherwise of

12  Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff who

13  therefore sue said Defendants by such fictitious names, and Plaintiff will amend this complaint to

14  show their true names and capacities when the same have been ascertained.

15      7. At all times relevant herein, each of the Doe Defendants was the agent, servant,

16  representative and/or employee of each of the remaining Defendants and was at all times acting

17  within the course and scope of such agency and/or employment, or was in some way the cause of

18  Plaintiff's damage.

19      8. As a direct and proximate result of the conduct of Defendants, and each of them, as

20  alleged herein, Plaintiff has been damaged through the demand for payment of excessive

21  mortgage payments, in an amount substantially in excess of minimum requirements for Superior

22  Court jurisdiction. In addition, Plaintiff seeks injunctive relief, which also brings the action

23  within the exclusive jurisdiction of the Superior Court.

24      9. The complained of actions occurred during 2009, well within all applicable statutes of

25  limitation.

26  **II.   Summary Description and History of Civil Code Sections 2923.5 and 2923.6**

27      10. Facing record residential foreclosures throughout the state and the devastating

28  economic impact of such foreclosures, the legislature passed, and on July 8, 2008, Governor

Complaint                    2

Schwarzenegger signed into law Senate Bill 1137. This Act, also known as the Perata Mortgage Relief Bill, was subsequently codified as Civil Code sections 2923.5 and 2923.6. It governs any residential mortgage executed between January 1, 2003 and December 31, 2007.

11. Among the protections which the statute contains for borrowers in foreclosure is a mandatory notification, meeting, and consultation process that must be made available to the borrower by the foreclosing lender prior to filing a notice of default under Civil Code section 2924. In its expression of legislative intention, the statute states that it is "modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could *avoid* foreclosure."

12. The Act also contains Civil Code section 2923.6, which provides a provision affecting "loan pools and servicers" which directly compels all lenders on real property to offer specific forbearances, payment reductions, postponements, interest rate reductions or other work-out terms to the borrowers before initiating foreclosure. The statute provides that "it is the intent of the Legislature that the mortgagee, beneficiary or authorized agent offer the borrower a loan modification or work-out plan if such a modification or plan is consistent with its contractual or other authority."

13. It is the Plaintiff's contention that section 2923.6 mandates that if the terms of the servicing agent's authority under its servicing agreement are broad enough to give that agent the power to offer loan modifications or work-out plans, then the lender or servicing agent is required to offer such a modification or work-out plan to the borrower if necessary to avoid foreclosure

III. **Plaintiffs' Contentions of Wrongful Conduct by Defendants**

14. On October 15, 2007, Plaintiff obtained a thirty-year mortgage from Homecoming Financial for his primary residence in the amount of $235,000.00. A true and correct copy of said mortgage is attached as Exhibit "1" to this complaint and is incorporated by this reference as though set out in its entirety. Homecoming Financial obtained an appraisal and assured both itself and Plaintiff that the value of the property supported such a loan values.

Complaint                                    3

15.  Paragraph 22 of said mortgage contains an attorney fee provision awarding reasonable attorneys' fees to the prevailing party in connection to any action for foreclosure.

16.  Subsequently, the afore-referenced mortgage, was sold, transferred, or in some manner assigned to Defendant GMAC.

17.  In April of 2009, Plaintiff experienced difficulty in paying the previously described mortgage from GMAC.  Plaintiff obtained an appraisal of the subject property at that time and learned that the property now had an appraised value of only $133,000.00.

18.  On or about May 4, 2009, Plaintiff, through his attorney, contacted GMAC in writing and formally requested a loan modification pursuant to Civil Code section 2923.6.   In this request, Plaintiff suggested both a modification of the interest rate on the loan and the outstanding balance of the loan.  A true and correct copy of this request is attached as Exhibit "2" to this complaint and is incorporated by this reference as though set out in its entirety.

19.  Within the time allotted to respond, GMAC denied the Plaintiff's request to modify Plaintiff's mortgage and/or had failed to adequately respond to Plaintiff's request to modify his mortgage, and/or indicated that it intended to commence foreclosure actions against Plaintiff's residence.

20.  Plaintiff alleges that in so doing GMAC did not make good-faith attempts to modify send loan so that foreclosure on Plaintiff's property could be avoided.

## PLAINTIFF'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

BREACH OF WRITTEN CONTRACT

(As Against All Defendants)

21.  Plaintiff incorporates paragraphs 1 through 20, inclusive, of the Common Allegations, as though fully set forth herein.

22.  On or about October 15, 2007, Plaintiff entered into a written mortgage agreement with Homecoming Financial, a copy of which is attached as Exhibit "1" and made a part of this pleading.   This mortgage, was then sold, transferred, or in some manner assigned to Defendant

Complaint                          4

GMAC. Defendant ALLIANCE was designated the trustee of the mortgage and the line of credit, and Defendant MORTGAGE ELECTRONIC RGISTRATION SYSTEMS, INC. was a beneficiary under this mortgage.

23. By the aforementioned acts and omissions, Defendants, and each of them, breached their written contract with Plaintiff by refusing to either modify Plaintiff's mortgage or work in good-faith with Plaintiff to modify Plaintiff's mortgage as required by law.

24. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contract, except those for which performance was excused by law or agreement.

## SECOND CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

#### (As Against All Defendants)

25. Plaintiff incorporates paragraphs 1 through 20, inclusive, of the Common Allegations, as though fully set forth herein.

26. In every contract, including every residential mortgage, the law implies a duty owed by each party to the other to act in good faith, to deal fairly with one another, to not deprive the other party of the benefits of the contract and to take such steps as are necessary and appropriate so that the reasonable expectations of the other party as to the benefits of the contract are fulfilled.

27. Defendants' failure to make a good-faith attempt to modify Plaintiff's mortgage as required by California law, constituted a breach of this covenant of good faith and fair dealing, proximately causing Plaintiff to suffer damages in an amount which will be proven at trial.

## THIRD CAUSE OF ACTION

### STATUTORY VIOLATIONS OF CIVIL CODE SECTION 2923.6

#### (As Against All Defendants)

28. Plaintiff incorporates paragraphs 1 through 20, inclusive, of the Common Allegations, as though fully set forth herein.

Complaint                    5

29. The wrongful conduct of Defendants, and each of them, in not allowing a meaningful modification of Plaintiff's mortgage violated California Civil Code section 2923.6.

30. Defendants failure to modify Plaintiff's mortgage as required by California law, and/or its failure to make a good-faith attempt as required by California law, proximately caused Plaintiff to suffer damages in an amount which will be proven at trial.

<u>FOURTH CAUSE OF ACTION</u>

INJUNCTIVE RELIEF

(As Against All Defendants)

31. Plaintiff incorporates paragraphs 1 through 20, inclusive, of the Common Allegations, as though fully set forth herein.

32. The wrongful conduct of Defendants, and each of them, in breaching the agreements regarding Plaintiff, as well as breaching the covenant of good faith and fair dealing, and or violating Civil Code section 2923.6, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff in that Plaintiff will suffer the foreclosure and loss of his residence.

33. Plaintiff has no adequate remedy at law for the injuries currently being suffered in that monetary damages after trial will not sufficient since Plaintiff will not be able to recover his residence of many years.

<u>FIFTH CAUSE OF ACTION</u>

DECLARATORY RELIEF

(As Against All Defendants)

34. Plaintiff incorporates paragraphs 1 through 20, inclusive, of the Common Allegations, as though fully set forth herein.

35. An actual controversy exists between Plaintiff and Defendants as to their legal rights and duties under the statutory authority cited herein, and/or the causes of action contained herein.

36. No adequate remedy is available other than that prayed herein by which the rights of the parties hereto may be determined.

37. Plaintiff desires a judicial determination as to the rights and obligations of the parties

Complaint                                    6

under the mortgage agreement and the statutory authority cited herein, and/or the causes of action contained herein.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, pursuant to each cause of action as expressed herein as follows:

**As to the first cause of action:**

1.   For a compensatory damage award according to proof;

2.   For reasonable attorneys' fees and costs of suit;

3.   For such other and further relief as the court deems just and proper.

**As to the second cause of action:**

1.   For a compensatory damage award according to proof;

2.   For reasonable attorneys' fees and costs of suit;

3.   For such other and further relief as the court deems just and proper.

**As to the third cause of action:**

1.   For a compensatory damage award according to proof.;

2.   For reasonable attorneys' fees and costs of suit;

3.   For such other and further relief as the court deems just and proper.

**As to the fourth cause of action:**

1.   For an injunction enjoining Defendants, and each of them, from any foreclosure actions against Plaintiff's residence;

2.   For reasonable attorneys' fees and costs of suit;

3.   For such other and further relief as the court deems just and proper.

///

///

Complaint                                        7

**As to the fifth cause of action:**

1.    For a declaration that the agreement between Plaintiff and Defendant as to whether the mortgage agreement has been breached by Defendant's failure to make a good-faith effort to modify the terms of the mortgage agreement as required by law;

2.    For reasonable attorneys' fees and costs of suit;

3.    For such other and further relief as the court deems just and proper.

DATED: May 22, 2009                    LAW OFFICES OF MOSES S. HALL,

BY:

MOSES S. HALL,
Attorney for Plaintiff,
IGNACIO SERRANO

Complaint                    8

EXHIBIT "1"

15

Recorded in Official Records, Orange County
Tom Daly, Clerk-R      rder

|||||||||||||||||||||||||||||||||||||    63.00

**2007000646464** 04:30pm 10/23/07
120 49 D11 20

0.00 0.00 0.00 0.00 57.00 0.00 0.00 0.00

Recording Requested By: Homecomings Financial

Return To:   Homecomings Financial
             One Meridian Crossing, Ste. 100
             Minneapolis   MN   55423
             Loan Number: 047-554924-2

Prepared By:   Homecomings Financial
               4350 Von Karman Avenue, Suite 100
               Newport Beach, CA 92660

*2544451*

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

MIN 100062604755492420

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   OCTOBER 15TH, 2007
together with all Riders to this document.
**(B) "Borrower"** is

IGNACIO SERRANO AND JOSEFINA SERRANO, HUSBAND AND WIFE AS JOINT
TENANTS

Borrower's address is   4109 WEST 5TH STREET, SANTA ANA, CA. 92703
                        . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL
     NETWORK, INC.)
Lender is a   LIMITED LIABILITY COMPANY
organized and existing under the laws of   DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS            Form 3005  1/01
MPCA7770 (09/2005) / 047-554924-2

VMP® -6A(CA) (02071.01

Page 1 of 15                Initials: I.S.   10/17/07

VMP Mortgage Forms, Inc. J.S.

16

Lender's address is  4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660
(D) "Trustee" is  ALLIANCE TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 15TH, 2007
The Note states that Borrower owes Lender  TWO HUNDRED THIRTY FIVE THOUSAND AND
NO/100                                                                                                 Dollars
(U.S. $  235,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       NOVEMBER 1ST, 2037        .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                          of ORANGE                                                 :

       [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

Parcel ID Number:   933-53-053                              which currently has the address of
4109 WEST 5TH STREET UNIT # 53                                                              [Street]
SANTA ANA                                    [City], California  92703          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207).01

MFCA7770 (09/2006) / 047-554924-2

Page 4 of 15

Initials: _I.S_


J.S. 10-17-07

Form 3005  1/01

19

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207).01

MFCA7770 (09/2006) / 047-554924-2

Page 7 of 15

Initials: _E.S_

Form 3005   1/01



J. S. 10-17-07

22

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**


23

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _I_ _S_

J. S. 10-17-07

-6A(CA) (0207).01

MFCA7770 (09/2006) / 047-554924-2

Page 9 of 15

Form 3005   1/01

24

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP® -6A(CA) (0207).01

MFCA7770 (09/2006) / 047-554924-2

Page 10 of 15

Initials: I. S

J. S. 10-17-07

Form 3005   1/01

25

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _J. S_

J. S. 10·17·07

26

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207).01

MFCA7770 (09/2006) / 047-554924-2

Page 12 of 15

Initials: _I. S_

J. S. 10-17-07

Form 3005   1/01

27

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



Initials: Z·S
J.S. 10-17-07

Form 3005   1/01

@ -6A(CA) (0207).01

Page 13 of 15

MFCA7770 (09/2006) / 047-554924-2

28

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_10/17/07_

_____   _Ignacio Serrano_____ (Seal)
                                                          -Borrower
                          IGNACIO SERRANO


_____   _Josefina Serrano 10-17-07_ (Seal)
                                                          -Borrower
                          JOSEFINA SERRANO


_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower


_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower


_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

State of California
County of *ORANGE* } ss.

On *October 17th 2007* before me, *Wanda M. Cooley Notary Public* personally appeared *Ignacio Serrano and Josefina Serrano*

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

WANDA M. COOLEY
Commission # 1531763
Notary Public - California
Kern County
My Comm. Expires Dec 4, 2008

-6A(CA) (0207).01
MFCA7770 (09/2006)  /  047-554924-2

Page 16 of 15

Initials: *I.S.*
*J.S. 10-17-07*

Form 3005  1/01

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

| NAME OF NOTARY: | WANDA M. Cauley |
| DATE COMMISSION EXPIRES: | Dec 4, 2008 |
| STATE WHERE BOND IS FILED: | CALIFORNIA |
| COUNTY WHERE BOND IS FILED: | Kern |
| COMMISSION NUMBER: | 1531763 |
| MANUFACTURER/VENDOR NO: | NNA1 |

PLACE OF EXECUTION: <u>SANTA ANA, CALIFORNIA</u>

DATED:  10/20/07

BY:  Joe Castro
FIRST AMERICAN TITLE INSURANCE COMPANY

31

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this  15TH     day of     OCTOBER, 2007     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
                                                                              (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
4109 WEST 5TH STREET UNIT # 53
SANTA ANA, CA 92703
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
VILLAGE GARDENS HOA
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
    A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
    B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT     MFCD8064 (08/2006) / 047-554924-2
VMP®-8R (0411)     Form 3140 1/01
Page 1 of 3         Initials: I.S
VMP Mortgage Solutions, Inc. J.S. 10-17-07
(800)521-7291

32

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _L.S_

J.S. 10-17-07

-8R (0411)                                      Page 2 of 3                                      Form 3140 1/01

MFCD8054 (08/2006)  /  047-554924-2

*33*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

10/17/07

_Ignacio Serrano_____ (Seal)                                         _____ (Seal)
                                          -Borrower                                                                  -Borrower
IGNACIO SERRANO


_____ (Seal)                                              _____ (Seal)
                                          -Borrower                                                                  -Borrower


_____ (Seal)                                              _____ (Seal)
                                          -Borrower                                                                  -Borrower


_____ (Seal)                                              _____ (Seal)
                                          -Borrower                                                                  -Borrower


@@-8R (0411)                          Page 3 of 3                        Form 3140 1/01
MFCD8054 (08/2006) / 047-654924-2

34

DESCRIPTION

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, CITY OF SANTA ANA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED 1/82 INTEREST IN AND TO LOT 1 OF TRACT NO. 7997, IN THE CITY OF SANTA ANA, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 340, PAGE(S) 8 AND 9 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM UNITS 1 THROUGH 82 INCLUSIVE AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT "B" TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED MARCH 15, 1974 IN BOOK 11095 PAGE 246, OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

UNIT NO. 53-A AND 53-B, AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL 1 ABOVE.

933-53-053

*35*

EXHIBIT "2"

36

# LAW OFFICE OF MOSES S. HALL

*2651 East Chapman Avenue, Suite 110*
*Fullerton, California 92831*
*Telephone (714) 738-4830*
*Facsimile (714)992-7916*

*Sent Via Mail* May 4, 2009

GMAC Mortgage
Loss Mitigation Department
3451 Hammond Ave.
Waterloo, IA 50702

RE: <u>Ignacio Serrano</u>
    Mortgage Loan # 0475549242

Dear Sir or Madame:

Please be advised that this office has been retained by Ignacio Serrano in regards to the above referenced mortgage. Please forward all future correspondence for this matter to this office. A copy of the Third Party Authorization is attached hereto.

My client is in receipt of the modification package sent by GMAC Mortgage on March 5, 2009 and has requested that I decline the offer on his behalf.

I am contacting you now to negotiate a new modification of my client's current mortgage, pursuant to California Civil Code § 2923.6. (Attached hereto is a copy of said statute).

Prior to the enactment of said statute, 95% of all loan modifications dealt only with interest reductions. However, smaller mortgage companies were doing principal reductions without standard variables, and as a result one person would receive a principal reduction of several thousand dollars, while others were given reductions of several hundred thousand dollars.

Based upon the statute, modifications must now be based upon a two step criteria:

    (1) The loan is in payment default, or payment default is reasonably foreseeable; and

    (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

RE: *Ignacio Serrano*
     *Mortgage Loan # 0475549242*
Page Two
May 4, 2009

Step one of the statute merely requires my client to honestly believe that he will not be able to continue to maintain his current monthly mortgage payments. Your records indicate that my client is delinquent and unable to make the monthly mortgage payment. Therefore, that portion of the statute is not in dispute.

In satisfaction of the second criteria, a Chicago Title market analysis is attached hereto . The market analysis indicates the fair market value of the residence at approximately $133,000.00 (as compared to the real property located at 4109 W 5th St., page 4 of the Chicago Title market analysis.) Without question no property sells for full market value at a foreclosure sale. The statute requires that the anticipated recovery under the modification or workout plan exceed the anticipated recovery through a foreclosure sale. It is the opinion of foreclosure consultant companies that currently lenders are netting between 70-80% of the fair market value. Given the best possible scenario, this property would generate proceeds of approximately $106,400.00, from a foreclosure sale. We are willing to set a fair market value for this loan modification consistent with the $133,000.00 value.

The interest rate on this loan is presently 6.875%. According to the above code section, the interest rate that is attached to this loan modification should be reduced to your present rate for a like kind borrower. In the effort of facilitating this modification, we are willing to assign to this modification an interest rate of 6% as this is the accurate rate for a like kind borrower.

We request a principal reduction of the existing loan of $234,203.48 to the anticipated foreclosure recovery/appraised value of $133,000.00 and agree to commence making payment of  $797.40 forthwith.

As my client has retained this office to represent him in what may be a matter that is litigated in the immediate future, the balance of the loan and the conditions of the loan are deemed disputed. The sums allotted for the mortgage payments stated above are being deposited into a client trust account and will remain there available for your company upon resolution of this matter, minus legal cost incurred by my client to get your company to comply with the statute. Said legal costs will be deducted on a monthly accounting basis until this matter is resolved.

*RE*: <u>Ignacio Serrano</u>
    Mortgage Loan # 0475549242
*Page Three*
*May 4, 2009*

Please respond within 15 days of receipt of this letter or legal action will be instituted against your company to obtain my client's legal rights.

If you have any questions or comments please feel free to contact me at the above address.

Sincerely,
Law Offices of Moses S. Hall

Moses S. Hall, Esq.
MSH:
Attachments

39

# LAW OFFICE OF MOSES S. HALL

2651 East Chapman Avenue, Suite 110
Fullerton, California 92831
Telephone (714) 738-4830
Facsimile (714)992-7916

## THIRD PARTY AUTHORIZATION

I hereby authorize ___GMAC_____(name of lender) to discuss my request for payment assistance/loan modifications with the individual(s) that I have identified below as my designated agent(s) (hereinafter "Designated Agent").

Further, ___GMAC_____(name of lender) is hereby authorized to discuss all current and future matters related to my mortgage and negotiate terms of a workout agreement with my Designated Agent and to deliver any and all necessary documents to my Designated Agent.

I understand that I will be fully responsible for reviewing any information or documentation that is sent by ___GMAC_____(name of lender) to my Designated Agent.

This authorization is effective from the date written below and remains valid for the next 180 consecutive days.

My Designated Agent(s) are:

___Law Office of Moses S. Hall___    ___(714) 738-4830___
Name of 3rd Party Agent                    Phone #

___Moses S. Hall___                          ___(714) 738-4830___
Name of 3rd Party Agent                    Phone #


___Ignacio Serrano___                 ___4/13/09___
Name of Client – Ignaccio Serrano        Date

4

40

*Property Profile\**                                     Chicago Title ●

| | |
|---|---|
| Primary Owner: | SERRANO, IGNACIO; SERRANO, JOSEFINA |
| Secondary Owner: | |
| Mail Address: | 4109 W 5TH ST APT P3 |
| | SANTA ANA CA 92703 |
| Site Address: | 4109 W 5TH ST |
| | SANTA ANA CA 92703 |
| Assessor Parcel Number: | 933-53-053 |
| Phone: | |
| Census Tract: | 0890.04 |
| Housing Tract Number: | 7997 |
| Lot Number: | |
| Page Grid: | 828 -H3 |
| Legal Description: | TR 7997 LOT 1 UNIT 53 UNIT ELEMENTS A & B OF PROJECT LOCATED ON AP 100 -631-06 TOGETHER WITH AN UND 1/82 INT IN LOT 1 |

**Property Characteristics**



| | | |
|---|---|---|
| Bedrooms - 2 | Year Built - 1964 | Square Feet - 921 SF |
| Bathrooms - 2.0 | Garage - Carport / | Lot Size - |
| Total Rooms - 5 | Fireplace - | Number of Units - 0 |
| Zoning - | Pool - | Use Code - Condominium (Residential) |
| No of Stories - | Latitude - 33.748837 | Longitude - -117.922609 |
| Building Style - | | |



| | | |
|---|---|---|
| Transfer Date - 10/23/2007 | Seller - GONZALEZ, JESSICA; GONZALEZ, JESUS E | Document # - 2007000646463BK-PG: - |
| Transfer Value - $235,000 | | Cost Per Square Feet - $255 |
| First Loan Amount - $235,000 | Lender - HOMECOMINGS FINANCIAL LLC MTG | |

**Assessment & Tax Information**



| | | |
|---|---|---|
| Assessed Value - $239,700 | Percent Improvement - 20.78% | Homeowner Exemption - |
| Land Value - $189,900 | Tax Amount - $2,673.90 | Tax Rate Area - 11-076 |
| Improvement Value - $49,800 | Tax Account ID - | Tax Status - Current |
| Market Improvement Value - | Market Land Value - | Market Value- |
| TaxYear : 2008 | | |

Courtesy of Chicago Title and Charles Armijo
Offered by CTIC
All information produced is deemed reliable but is not guaranteed.



## Transaction History

Chicago Title ⬤

Prior Transfer

| | | | |
|---|---|---|---|
| Borrowers Name | SERRANO, IGNACIO; SERRANO, JOSEFINA | | |
| Recording Date | 10/23/2007 | Document # | 2007000646463 |
| Price | $235,000 | | |
| First TD | $235,000 | TD Due Date | 11/01/2037 |
| Mortgage Doc # | 2007000646464 | Loan Type | Unknown |
| Lender Name | HOMECOMINGS FINANCIAL LLC | Interest Rate | |

Courtesy of Chicago Title and Charles Armijo
Offered by CTIC
All information produced is deemed reliable but is not guaranteed.

cyberhomes

42

*Sales Comparables Map*                                                    Chicago Title



```
1: 3934 W 5TH ST              2: 4002 W 5TH ST
3: 4006 W 5TH ST              4: 4004 W 5TH ST
5: 4002 W 5TH ST              6: 4109 W 5TH ST
7: 3938 W 5TH ST              8: 4109 W 5TH ST
9: 4201 W 5TH ST             10: 4109 W 5TH ST
11: 4109 W 5TH ST            12: 4109 W 5TH ST
13: 4109 W 5TH ST            14: 4109 W 5TH ST
15: 4109 W 5TH ST
```

43

## Sales Comparables

Chicago Title ⊛

☑ **3934 W 5TH ST**                              APN: 938-69-053                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 03/18/2009 | Bld/Area: | Lot Area: |
| Price: $135,000 | Rm/Bed/Bath: // | Proximity: .09Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑ **4002 W 5TH ST**                              APN: 938-69-064                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 03/16/2009 | Bld/Area: | Lot Area: |
| Price: $77,000 | Rm/Bed/Bath: // | Proximity: .03Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑ **4006 W 5TH ST**                              APN: 938-69-034                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 03/16/2009 | Bld/Area: | Lot Area: |
| Price: $69,000 | Rm/Bed/Bath: // | Proximity: .03Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑ **4004 W 5TH ST**                              APN: 938-69-047                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 03/13/2009 | Bld/Area: | Lot Area: |
| Price: $263,203 | Rm/Bed/Bath: // | Proximity: .03Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑ **4002 W 5TH ST**                              APN: 938-69-066                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 03/12/2009 | Bld/Area: | Lot Area: |
| Price: $75,000 | Rm/Bed/Bath: // | Proximity: .03Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑ **4109 W 5TH ST**                              APN: 933-53-069                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 03/06/2009 | Bld/Area: 1055 | Lot Area: |
| Price: $133,000 | Rm/Bed/Bath: 4/2/1.5 | Proximity: .00Mi. |
| Cost/Sq Feet: $126 | Year Built: 1964 | Pool: |
| Building Style: | | |

☑ **3938 W 5TH ST**                              APN: 938-69-080                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 02/18/2009 | Bld/Area: | Lot Area: |
| Price: $108,000 | Rm/Bed/Bath: // | Proximity: .09Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑ **4109 W 5TH ST**                              APN: 933-53-028                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 02/13/2009 | Bld/Area: 921 | Lot Area: |
| Price: $105,000 | Rm/Bed/Bath: 5/2/2.0 | Proximity: .00Mi. |
| Cost/Sq Feet: $114 | Year Built: 1964 | Pool: |
| Building Style: | | |

☑ **4201 W 5TH ST**                              APN: 930-33-463                    Get Detail

| | | |
|---|---|---|
| Transfer Date: 02/06/2009 | Bld/Area: | Lot Area: |
| Price: $118,000 | Rm/Bed/Bath: // | Proximity: .05Mi. |
| Cost/Sq Feet: N/A | Year Built: | Pool: |
| Building Style: | | |

☑  **4109 W 5TH ST**                                APN: 933-53-034                    Get Details
      Transfer Date: 02/04/2009          Bld/Area: 921              Lot Area:
      Price: $91,886                            Rm/Bed/Bath: 5/2/2.0      Proximity: .00Mi.
      Cost/Sq Feet: $100                    Year Built: 1964          Pool:
      Building Style:

45

## Sales Comparables

Chicago Title ⦿

☑ **4109 W 5TH ST**                                   APN: 933-53-032                          Get Detail

| | | |
|---|---|---|
| Transfer Date: 02/03/2009 | Bld/Area: 921 | Lot Area: |
| Price: $170,000 | Rm/Bed/Bath: 5/2/2.0 | Proximity: .00Mi. |
| Cost/Sq Feet: $185 | Year Built: 1964 | Pool: |
| Building Style: | | |

☑ **4109 W 5TH ST**                                   APN: 933-53-043                          Get Detail

| | | |
|---|---|---|
| Transfer Date: 01/30/2009 | Bld/Area: 921 | Lot Area: |
| Price: $122,000 | Rm/Bed/Bath: 5/2/2.0 | Proximity: .00Mi. |
| Cost/Sq Feet: $132 | Year Built: 1964 | Pool: |
| Building Style: | | |

☑ **4109 W 5TH ST**                                   APN: 933-53-003                          Get Detail

| | | |
|---|---|---|
| Transfer Date: 01/14/2009 | Bld/Area: 1044 | Lot Area: |
| Price: $134,000 | Rm/Bed/Bath: 4/2/1.5 | Proximity: .00Mi. |
| Cost/Sq Feet: $128 | Year Built: 1964 | Pool: |
| Building Style: | | |

☑ **4109 W 5TH ST**                                   APN: 933-53-004                          Get Detail

| | | |
|---|---|---|
| Transfer Date: 01/07/2009 | Bld/Area: 921 | Lot Area: |
| Price: $94,980 | Rm/Bed/Bath: 5/2/2.0 | Proximity: .00Mi. |
| Cost/Sq Feet: $103 | Year Built: 1964 | Pool: |
| Building Style: | | |

☑ **4109 W 5TH ST**                                   APN: 933-53-017                          Get Detail

| | | |
|---|---|---|
| Transfer Date: 12/22/2008 | Bld/Area: 921 | Lot Area: |
| Price: $174,800 | Rm/Bed/Bath: 5/2/2.0 | Proximity: .00Mi. |
| Cost/Sq Feet: $190 | Year Built: 1964 | Pool: |
| Building Style: | | |

Sort By:   [Sales Price]   [Proximity]
[Select All]   [UnSelect All]   [Display Only Marked Sales]

## Market Analysis

Chicago Title ⦿

| | | | |
|---|---|---|---|
| Total Area Sales | 15 | Median # of Bedrooms | 2 |
| Median Lot Size | | Median # of Baths | 1.5 |
| Median Living Area | 921 SF | Median Year Built | 1964 |
| PriceRange - 2 Yrs | $69,000 to $263,203 | Age Range | |
| Median Value | $118,000 | Median Age | 45 Years |

Courtesy of Chicago Title and Charles Armijo
Offered by CTIC
All information produced is deemed reliable but is not guaranteed.

**cyberhomes**

46

Mortgage loan calculator

*Adv:* Get fiscally fit. GMAC Bank CDs

## Mortgage Calculator

### Mortgage Payment Calculator

Mortgage amount: $ 155000

Mortgage term: 30 years or 360 months

Interest rate: 5.00 % per year

Mortgage start date: Apr 13 2009

Monthly Payments: $ 797.40

Extra payments

Adding: $ 0 to your monthly mortgage payment

Adding: $ 0 as an extra yearly mortgage payment every Apr

Adding: $ 0 as a one-time payment in Apr 2009

Changes paid off date to: Apr 13, 2009

## Mortgage Rate Search

Compare local mortgage rates

**4.99%** Mortgages
This is the daily overnight average for a 30-year fixed mortgage.

Find the best mortgage rates in your area

Enter a ZIP code: Zip Code

Mortgage purchase: -- select --

### Mortgage Overnight Averages

| Product | Rate | +/- | Last week |
|---|---|---|---|
| 30 yr fixed | 4.99% | | 5.04% |
| 15 yr fixed | 4.64% | | 4.71% |
| 5/1 ARM | 4.50% | | 4.78% |
| 30 yr fixed rate | 5.02% | | 5.03% |

View rates by local area: Zip Code

### Sponsored Ads

Liberty Mutual Homeowners Insurance – Protect Your Home With Liberty Mutual Insurance. Covers Fire, Theft, and More!

Earn From 3.73% to 5.04% – With GE Capital Corporation. Not An Offer Of Securities For Sale.

What's Your Credit Score? – A good Credit Score is 850 or higher. Find out your Score plus get all 3 Credit Reports - Free!

Mortgage Refinance Rates at 4.51% FIXED! – $290,000 mortgage for $698/month. See Lower Payment NOW - No SSN Reqd

Mortgage Alert: 30-Year FIXED Refinance at 4.5% APR – Mortgage Rates at 4.3% APR. $8100. Refinance Now & Save $1000s. See New Payment. No SSN Required.

### Marketplace

CreditCardGuide.com
Find the RIGHT Card for You!

See the wide array of credit card offers. Compare & find the best credit card. Apply Now!

- 0% Balance Transfer & Purchase
- Low Interest Credit Cards
- Business Credit Cards
- Rewards Credit Cards

### Advertising Partners

Get Instant Closing Cost Quotes!

Compare, Decide and Apply!

2009 Credit Report & Score

Get Your Credit Score Instantly

Mortgage loan calculator

| Today's Mortgage Rates - 04/13/2009 | | | | | | AmeriSave Direct Mortgage Lender | | |
|---|---|---|---|---|---|---|---|---|
| Loans up to $417,000 | Rate | APR | Loans up to $1,000,000 | Rate | APR | FHA Rates | Rate | APR |
| 30 Year Fixed | 4.250 | 4.547 | 5 Year ARM | 4.500 | 4.64 | 30 Year Fixed | 4.500 | 4.954 |
| 15 Year Fixed | 4.000 | 4.566 | 3 Year Interest Only ARM | 4.500 | 4.627 | 15 Year Fixed | 4.250 | 4.882 |

*$260K loan, Jumbo $420M loan, FL 80% CLTV, Effective 04/13/2009 Terms apply.   Get Approved, FAST & EASY   Apply

About us | Advertise with Bankrate | Partners | Press Room | Investor Relations | Contact Us | Sitemap

Understanding Bankrate's rate averages

© 2009 Bankrate, Inc. All Rights Reserved.   Privacy | Terms of Use

48

## California Civil Code Section

2923.6.  (a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:
   (1) The loan is in payment default, or payment default is reasonably foreseeable.
   (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.
   (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.
   (c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

# PROOF OF SERVICE

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On July 27, 2009, I served the document(s) described as **NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT UNDER 28 U.S.C. § 1441(b)** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed to the parties as listed on the attached service list in the following manner: SEE ATTACHED SERVICE LIST

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071.

☐ UPS NEXT DAY AIR: I deposited such envelope in a facility regularly maintained by UPS with delivery fees fully provided for or delivered the envelope to a courier or driver of UPS authorized to receive documents at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐ BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT: On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☐ [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal] I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 27, 2009, at Los Angeles, California.

_Heather Thai_
Heather Thai

**SERRANO v. GMAC MORTGAGE, LLC et al.**

**SERVICE LIST**

Moses S. Hall, Esq.
LAW OFFICES OF MOSES S. HALL
2651 E. Chapman Avenue, Suite 110
Fullerton, CA 92831

Attorneys for Plaintiff
IGNACIO SERRANO

Telephone:  (714) 738-4830
Facsimile:  (714) 992-7916

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV09- 861 DOC (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| IGNACIO SERRANO | GMAC MORTGAGE, LLC; ALLIANCE TITLE; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Moses S. Hall, Esq. <br> LAW OFFICES OF MOSES S. HALL <br> 2651 E. Chapman Avenue, Suite 110 <br> Fullerton, CA 92831 | Deborah Yoon Jones, Esq. (State Bar No. 178127) <br> Adriene Plescia Lynch, Esq. (State Bar No. 259100) <br> ALSTON & BIRD LLP <br> 333 S. Hope Street, 16th Floor <br> Los Angeles, CA 90071 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1332(a) and 1441(b) (Diversity)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☒ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☒ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **SACV09-0861**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
    ☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Orange | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
    ☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | GMAC Mortgage, LLC: Delaware limited liability company whose members are domiciled outside California<br>Mortgage Electronic Registration Systems, Inc.: Delaware<br>Alliance Title: defunct |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Orange | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  July 27, 2009

        Adriene Mesch Lynch

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com

Key to Statistical codes relating to Social Security Cases.

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com