Moses S. Hall, Esq., (SBN 153759)
**LAW OFFICE OF MOSES S. HALL**
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831
Telephone: (714) 738-4830
Fax: (714) 992-7916

Attorney for Plaintiff,
IGNACIO SERRANO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO SERRANO, an individual, | ) Case No. : SACV09-0861 DOC (ANx) |
| Plaintiff, | ) SECOND AMENDED COMPLAINT FOR: |
| vs. | ) |
| GMAC MORTGAGE, an entity whose form is unknown; ALLIANCE TITLE, an entity whose form is unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOES 1 through 50, inclusive, | ) 1. WRONGFUL FORECLOSURE BASED UPON STATUTORY VIOLATIONS<br>) 2. BREACH OF CONTRACT<br>) 3. CANCELLATION OF TRUSTEE SALE<br>) 4. PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF UNDER BUSINESS AND PROFESSIONS CODE 17200 ET AL. |
| Defendants. | ) |

## I.   COMMON ALLEGATIONS

Plaintiff IGNACIO SERRANO alleges:

1.   At all relevant times herein, Plaintiff is an individual residing in the County of Orange, State of California.

2.   Defendant GMAC MORTGAGE, (hereinafter referred to as "GMAC") is an entity

**SECOND AMENDED COMPLAINT**

- 1 -

**1** whose form is unknown to Plaintiff but which is organized and existing under the laws of the

**2** United States and which, at all relevant times, was doing business as a real estate financial

**3** lender.

**4**     3.   Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, (hereinafter

**5** "MERS") is a Delaware Corporation which at all relevant times was doing business as the

**6** Beneficiary of the Deed of Trust between Plaintiff and Defendant GMAC.

**7**     4.   The true names or capacities, whether individual, corporate, associate or otherwise

**8** of Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff who

**9** therefore sues said Defendants by such fictitious names, and Plaintiff will amend this complaint

**10** to show their true names and capacities when the same have been ascertained.

**11**     5.   At all times relevant herein, each of the Doe Defendants was the agent, servant,

**12** representative and/or employee of each of the remaining Defendants and was at all times acting

**13** within the course and scope of such agency and/or employment, or was in some way the cause of

**14** Plaintiff's damage.

**15**     6.   The complained of actions occurred from September 2008 and continue throughout

**16** 2009, well within all applicable statutes of limitation.

**17**        **II.**    **Summary Description and History of Civil Code Section 2923.5**

**18**     7.   On July 8, 2008, Governor Schwarzenegger signed into law Senate Bill 1137.  This

**19** Act, also known as the Perata Mortgage Relief Bill, was subsequently codified as Civil Code §§

**20** 2923.5 and 2923.6. It governs any residential mortgage executed between January 1, 2003 and

**21** December 31, 2007.

**22**     8.   Among the protections which the statute contains for borrowers in foreclosure is a

**23** mandatory notification, meeting, and consultation process that must be made available to the

**24** borrower by the foreclosing lender, mortgagee, trustee, beneficiary, or authorized agent, prior to

**25** filing a notice of default under Civil Code § 2924.  The statute states that it is "modifying the

**26** foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact

**27** borrowers and explore options that could *avoid* foreclosure."

**28**     9.   Civil Code § 2923.5 also contains additional requirements Lenders, mortgagees,

**SECOND AMENDED COMPLAINT**

**- 2 -**

trustees, beneficiaries, or authorized agents must comply with **prior to** filing a Notice of Default pursuant to California Civil Code § 2924.   The section requires the Lender to contact the borrower in person or by telephone in order to assess the borrower's financial situation and **explore options** for the borrower to *avoid* foreclosure. During the initial contact, the Lender shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.  Any meeting may occur telephonically.  Civil Code § 2923.5 further requires that the Lender may not file a Notice of Default until 30 days after this contact and good faith discussion takes place.

10.  Further it is the Plaintiff's contention that Civil Code § 2923.5 mandates that a good faith discussion take place regarding the borrower's financial situation and an actual exploration into the borrowers' options to stay in their home. Plaintiff contends that section 2923.5 requires a discussion concerning the possibility of avoiding foreclosure or modifying the current mortgage so, in these times, the borrower could actually explore the possibilities of avoiding foreclosure and not receive merely a cursory phone call assessing the borrower's financial situation.

11.  In addition Civil Code § 2923.5 (c) provides that if a mortgagee, trustee, beneficiary, or authorized agent, has filed a notice of default prior to the enactment of the section 2923.5, then the mortgagee, trustee, beneficiary, or authorized agent, must, in the notice of sale, include a declaration that states (1) the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure, or (2) list the efforts made, if any to contact the borrower in the event the contact was made; and this declaration must comply with California Code of Civil Procedure § 2015.

**III. Summary Description and History of Civil Code Section 2923.52**

12.  Notwithstanding Section 2923.5 and Section 2923.6, due to the yet astronomical

**SECOND AMENDED COMPLAINT**

1 increase in residential property foreclosures throughout California, Governor Schwarzenegger
2 again on June 1, 2009 signed into law the California Foreclosure Prevention Act. This act was
3 subsequently codified as Civil Code Section 2923.52. It governs any residential mortgage
4 executed between January 1, 2003 and December 31, 2007.

5     13. The intent of Civil Code Section 2923.52 is to slow the deleterious effects that were
6 resulting from the continued rise in foreclosures by modifying the foreclosure process to allow
7 an additional ninety days (90) to the current notice requirements of California Civil Code Section
8 2924 in order for the parties to pursue loan modifications to prevent foreclosure from occurring.

9     **II. Summary Description and History of Civil Code Section 2923.53**

10     14. Section 2923.52 contains an exemption for loans that are serviced by mortgage loan
11 servicers if the servicer has obtained a current and valid order of exemption pursuant to section
12 2923.53. There is also an exemption for loans made, purchased, or serviced by a California state
13 or local public housing agency or authority, and for loans that are collateral for securities
14 purchased by a local public housing agency or authority. In order to qualify for the exemption
15 under section 2923.53, the mortgage loan servicer must have implemented a comprehensive loan
16 modification program that includes some combination of: an interest rate reduction for a fixed
17 term for at least five years, an extension of the amortization period of the loan term to no more
18 than 40 years from the original date of the loan, deferral of some portion of the principal amount
19 of the unpaid principal balance until maturity of the loan, **reduction of the principal amount**,
20 compliance with a federally mandated loan modification program, and other factors that the
21 commissioner determines are appropriate and offered some type of assistance in connection with
22 the program if requested by the borrower.

23     **PLAINTIFF'S CAUSES OF ACTION**
24     <u>**FIRST CAUSE OF ACTION**</u>
25     **WRONGFUL FORECLOSURE BASED ON STATUTORY VIOLATIONS**
26     **(Against All Defendants)**

27     15. Plaintiff incorporates paragraphs 1 through 14, inclusive, as though fully set forth
28 herein.

**SECOND AMENDED COMPLAINT**

- 4 -

16. Plaintiff, at all times relevant to this Second Amended Complaint ('SAC'), was the owner of his real property. Plaintiff's property is commonly known as 4109 West 5th Street, Unit #53, Santa Ana, California, 92703. This property will hereinafter be referred to as "Subject Property."

17. On or about October 15, 2007, Plaintiff obtained a thirty-year mortgage from Homecoming Financial in the amount of $235,000.00 for his primary residence located at 4109 West 5th Street, Unit #53, Santa Ana, California 92703. A true and correct copy of said mortgage is attached as **Exhibit "1"** to this complaint and is incorporated by this reference as though set out in its entirety.

18. The Plaintiff owned and continually occupied, as his principal residence, the real property subject to the aforementioned mortgage.

19. Plaintiff is informed and believes that the Deed of Trust held by Homecoming Financial was bought out, sold, transferred, reformed, or assumed by Defendant GMAC.

20. On or about October 15, 2008 GMAC initiated a non-judicial foreclosure proceeding on Plaintiff's residence, by causing the Trustee to record a Notice of Default and Election to Sell under Deed of Trust. A true and correct copy of this Notice of Default is attached as **Exhibit "2."**

21. After recording the Notice of Default on October 15, 2008, Defendant GMAC contacted Plaintiff and began discussing the possibilities of a loan modification.

22. In April of 2009, Defendant GMAC caused, without legal justification, the negotiations to stop and again initiated foreclosure proceedings on Plaintiff's home.

23. On or about June 10, 2009, GMAC caused the sale of Plaintiff's property at a Trustee's Sale. As a result, Plaintiff has been wrongfully deprived of home via a Trustee's Sale which concluded with a disposition of the Plaintiff's property.

24. Plaintiff alleges that GMAC authorized and/or initiated this foreclosure proceeding without first notifying Plaintiff, as was its duty pursuant to Civil Code § 2923.5.

25. Pursuant to California Civil Code § 2924(b), the Defendants, and each of them, had an obligation to send by certified mail a copy of the duly recorded Notice of Default, which was

**SECOND AMENDED COMPLAINT**

1  done. However, the Notice of Default, as amended by California Civil Code § 2923.5, required

2  that the Notice have an attached Declaration that complied with the requirements of California

3  Code of Civil Procedure § 2015.5, in addition to the requirements described in Paragraphs 7

4  through 11 of this second amended complaint.

5      26.  The Notice of Default (Attached as **Exhibit '2'**) recorded by the Defendants in this

6  matter contained the following language:

7          "The undersigned declares that the beneficiary or its authorized agent has declared

8          that they have complied with California Civil Code Section 2923.5 by making

9          contact with the borrower or tried with due diligence to contact the borrower as

10         required by California Civil Code Section 2923.5."

11

12     27.  California Civil Code § 2923.5(b) provides that "A notice of default filed pursuant to

13  Section 2924 shall include a declaration from the mortgagee, beneficiary, or authorized agent

14  that it has contacted the borrower, tried with due diligence to contract the borrower as required

15  by this section, or the borrower has surrendered the property to the mortgagee, trustee,

16  beneficiary or authorized agent."

17     28.  California Civil Code, §2923.5(b) and (g)(1)(2)(A)(B)(C) (3)(4)(5) require a lender

18  to conduct "due diligence" in attempting to contact the borrower by: attempting to contact the

19  borrower first by a first class letter that includes a toll-free number for HUD to find a HUD-

20  certified housing counseling agency; after the letter has been sent to contact the borrower by

21  telephone at least three times, at three hours and on different days; attempting to contact the

22  borrower with an automated system that connects borrowers to a live representative; send a

23  certified letter to the borrower with return receipt requested if borrower does not respond with

24  two weeks; provide a means for the borrower to contact in a timely manner; post a prominent

25  link on the homepage of the Internet Web site.

26     29.  Plaintiff received no first class letter from the Defendants providing a toll-free

27  number for HUD to find a HUD-certified housing counseling agency. Plaintiff received no

28  contact prior to the filing of the Notice of Default. Further, Defendants did not send a certified

**SECOND AMENDED COMPLAINT**

1   letter to Plaintiff with return receipt requested after Plaintiff had sent no response after two
2   weeks.

3       30. As a result of the above acts or omissions, Defendants have violated Civil Code
4   §2923.5 prior to their filing of the Notice of Default pursuant to Civil Code §2924. This
5   violation make the foreclosure and sale of Plaintiff's residence wrongful, improper, and illegal
6   under California law.

7       31. Defendants have further violated Civil Code §2923.5, by virtue of the "declaration"
8   attached to their Notice of Default failing to meet the requirements of Code of Civil Procedure
9   §2015.5.

10      32. Code of Civil Procedure §2015.5 provides that whenever any matter is required to be
11  supported, evidenced, established, or proven by the declaration of a person, such matter may be
12  supported in "the writing of such person which recites that it is certified or declared by him or
13  her to be true under penalty of perjury…"

14      33. California Civil Code §2923.5 requires such a declaration. However, Defendants'
15  notice of default does not contain any recitation that the declaration is made under the penalty of
16  perjury nor does it contain any evidence tending to prove that it was made under penalty of
17  perjury. Therefore, Defendants are in violation of California Civil Code §2923.5 by virtue of
18  their failure to comply with the declaration requirements of Code of Civil Procedure §2015.5.

19      34. Because of Defendants' failure to comply with the requirements of Code of Civil
20  Procedure §2015.5, and thus violating Civil Code §2923.5, the foreclosure and sale of Plaintiff's
21  residence was wrongful, improper, and illegal under California law.

22      35. In addition, Defendants applied for and were granted an exemption from the
23  additional ninety-day notice requirements contained in Civil Code section 2923.52. To obtain
24  this exemption, the Defendants' represented to the Department of Corporations that it had a
25  comprehensive loan modification program, as required by section 2923.53 to qualify for the
26  exemption.  Said representations were false and/or fraudulent. Plaintiff's loan met the
27  requirements for a loan modification, yet Plaintiff never received any information regarding any
28  loan modification program. Therefore, either Defendants made misrepresentations to the

**SECOND AMENDED COMPLAINT**

1   Department of Corporations, or Plaintiff was wrongfully denied any opportunity to discuss and

2   explore options regarding a modification of his loan.

3       36.   Further, the wrongful conduct of all Defendants, by not allowing the required ninety

4   day period after the three-month foreclosure period before instituting foreclosure proceedings,

5   violated California Civil Code Section 2923.52.

6       37.   Defendants' failure to observe this added ninety days as required by California law,

7   coupled with Defendants' failure to make a good-faith attempt to modify Plaintiff's mortgage

8   and offer to implement the programs that Defendants represented that it had, makes any

9   foreclosure on Plaintiffs' property wrongful and deprives Plaintiff of his right under statute

10  because Plaintiff was denied the opportunity to discuss and explore the options of a loan

11  modification as required by California law. Further, Defendants' actions proximately caused

12  Plaintiff to suffer damages in an amount which will be proven at trial.

13      38.   Defendants' actions were against public policy because the legislature enacted this

14  provision to slow the process of foreclosures in order for foreclosures to be avoided. Defendants'

15  actions in disregarding the additional ninety days, as well as the misrepresentations made to the

16  California Department of Corporations that led Plaintiff to believe his loan was to be modified

17  and the foreclosure process delayed, were precisely contrary to the policy behind Civil Code

18  Section 2923.52.

19      39.   The Defendants failure to comply with Civil Code §2923.5 and 2923.52 greatly

20  prejudiced the Plaintiff's rights of un-encumbering his property or refinancing his property in

21  that Plaintiff was not properly noticed of the foreclosure pending on his property.

22      40.   As a result of these wrongful acts and omissions, Plaintiff was not properly notified

23  of the pending foreclosure process that was instituted in violation of Civil Code section 2924(b)

24  and 2923.5.

25      41.   As a result of these wrongful acts and omissions, Plaintiff has been precluded from

26  properly curing any default in his mortgage and also from all the rights and benefits that go along

27  with a person's ability to own and reside in a home.

28      42.   As a result of these wrongful acts and omissions, Plaintiff has been precluded from

**SECOND AMENDED COMPLAINT**

- 8 -

benefiting from the rights granted by Civil Code section 2924(b), 2923.5 and, 2923.52 and attempting to modify his current loan to a principal amount and an interest rate which he could not only afford, but would have allowed him to stay in his home.

43. Notwithstanding the notice to Defendants of their violations, Defendant's intentionally, willfully, maliciously, oppressively, and fraudulently continued to act in a manner which resulted in the wrongfully foreclosure of Plaintiff's residence, his eviction from his home, and the sale of Plaintiff's home to a third party.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

## (As Against All Defendants)

44. Plaintiff incorporates paragraphs 1 through 43, as though fully set forth herein.

45. A mortgage is a contract pursuant to California Civil Code section 2920 (a).

46. On or about October 15, 2007, Plaintiff obtained a thirty-year mortgage from Homecoming Financial in the amount of $235,000.00 for his primary residence located at 4109 West 5th Street, Unit #53, Santa Ana, California 92703. A true and correct copy of said mortgage is attached as **Exhibit "1"** to this complaint and is incorporated by this reference as though set out in its entirety. Defendant MERS is the beneficiary of the aforesaid mortgage/deed of trust.

47. Plaintiff is informed, believes, and alleges that the Deed of Trust held by Homecoming Financial was bought out, sold, transferred, reformed, or in some manner assumed by Defendant GMAC.

48. In accepting the assignment of the mortgage between Plaintiff and Homecoming Financial, GMAC as well as the other Defendants, obtained both the rights and obligations contained in said mortgage. Consequently, a valid contract exists between Plaintiff and GMAC.

49. Paragraph 22 of said mortgage contains an attorney fee provision awarding reasonable attorney's fees to the prevailing party in connection to any action for foreclosure. Paragraph 22 further provides that any foreclosure on Plaintiff's residence would be performed in accordance with California law. Furthermore, Paragraph 16 of said mortgage contains a provision that the mortgage shall be governed by California law.

## SECOND AMENDED COMPLAINT

- 9 -

50. Therefore, based on the above agreement, the Defendants were bound to act in accordance with California law when initiating foreclosure on Plaintiff's property. Specifically, the Defendants were bound to obey, and conform their actions to, California Civil Code sections 2923.5, and 2923.52.

51. Defendants breached the contract when they committed the following acts or omissions:

(1) foreclosed upon Plaintiff's residence, evicted Plaintiff, and sold Plaintiff's residence without complying with Civil Code section 2923.5's requirements that (a) Plaintiff receive a first class letter from the Defendants providing a toll-free number for HUD to find a HUD-certified housing counseling agency; (b) that Plaintiff be contacted prior to the filing of the Notice of Default to discuss a loan modification in accordance with section 2923.5, (c) that Plaintiff be sent a certified letter with return receipt requested after Plaintiff had not responded to the Defendants after two weeks, and (d) that any notice of default contain a valid declaration of compliance with the requirements of Code of Civil Procedure section 2923.5.

And

(2) Foreclosed upon Plaintiff's residence, evicted Plaintiff, and sold Plaintiff's residence without (a) first offering Plaintiff a modification in accordance to the comprehensive loan modification program which Defendants represented to the Department of Corporations was in place so as to obtain an exemption from the additional ninety day period contained in Civil Code section 2923.52, and (b) by not allowing the required ninety day period after the three-month foreclosure period before instituting foreclosure proceedings in violation of Civil Code Section 2923.52.

52. The above failures of the Defendants to comply with the California Civil Code is a direct breach of Paragraphs 16 and 22 of the mortgage agreement between Plaintiff and Defendants.

53. As a direct and proximate cause of the Defendants' breach of contract, Plaintiff has

**SECOND AMENDED COMPLAINT**

1  suffered damages in an amount that will be proven at trial.

2  **THIRD CAUSE OF ACTION**

3  **CANCELLATION OF THE TRUSTEE'S SALE**

4  **(As Against All Defendants)**

5  54.  Plaintiff incorporates paragraphs 1 through 53, inclusive, as though fully set forth

6  herein.

7  55.  By virtue of the Defendants' wrongful foreclosure based upon violation of the

8  aforementioned statutory provisions, as well as the afore-described breach of the mortgage

9  agreement by the Defendants, the Notice of Default and all subsequent foreclosure proceedings

10  should be canceled.

11  56.  Plaintiff requests that Defendants be ordered to cancel the Trustee's Sale, rescind

12  and restore Plaintiff's property to him.

13  **FOURTH CAUSE OF ACTION**

14  **PERLIMININARY AND PERMANENT**

15  **INJUNCTIVE RELIEF UNDER BUSINESS AND**

16  **PROFESSIONS CODE §§ 17200 ET SEQ.**

17  **(As Against All Defendants)**

18  57.  Plaintiff incorporates paragraphs 1 through 56, inclusive as though fully set forth

19  herein.

20  58.  California's unfair competition statute, Business and Professions Code section 17200

21  et seq., prohibits any unfair competition, which means "any unlawful, unfair or fraudulent

22  business act or practice."  This tripartite is disjunctive and the plaintiff need only allege one of

23  the three theories to properly plead a claim under section 17200.  Section 17200 was written

24  broadly in order to allow the courts maximum discretion to prohibit new schemes to defraud. The

25  statute provides that unfair competition includes unlawful, unfair, or fraudulent business

26  practices and unfair, deceptive, untrue, or misleading advertising.

27  59.  The Defendants' violations of Civil Code section 2923.5 in  (a) not sending Plaintiff

28  a first class letter providing a toll-free number for HUD to find a HUD-certified housing

**SECOND AMENDED COMPLAINT**

counseling agency; (b) not contacting Plaintiff prior to the filing of the Notice of Default to discuss a loan modification in accordance with section 2923.5, (c)  not sending Plaintiff  a certified letter with return receipt requested after Plaintiff had not responded to the Defendants after two weeks, and (d) filing a notice of default not containing a valid declaration of compliance with the requirements of Code of Civil Procedure section 2923.5 and (e) refusing to enter into good faith discussions with Plaintiff in compliance with 2923.5 are all business practices that are unlawful, unfair, and/or fraudulent under Business and Professions Code section 17200.

60.  In addition, the Defendants' actions herein in violating section 2923.52, in either making misrepresentations to the State of California to obtain an exemption under section 2923.53 from section 2923.52's requirements or their failure to implement or offer a loan modification program in compliance with section 2923.52 to Plaintiff are also business practices that are unlawful, unfair, and/or fraudulent under Business and Professions Code section 17200.

61.  The above-described unfair practices injured Plaintiff in an amount which will be proven at the time of trial.

62.  Plaintiff is informed and believes and therefore alleges that the Defendants performed those above-mentioned acts for the purpose of injuring Plaintiff and facilitating Plaintiff losing her home to foreclosure. Plaintiff further alleges that the Defendants, unless restrained, will continue to engage in the above-described unfair business practices.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them on all causes of actions as follows:

**As to the first cause of action for wrongful foreclosure:**

1.    For a compensatory damage award according to proof;

2.    For exemplary and punitive damages in the sum of one million dollars ($1,000,000.00) from each Defendant.

3.    For such other and further relief as the court deems just and proper.

### SECOND AMENDED COMPLAINT

**As to the second cause of action for breach of contract:**

1. For a compensatory damage award according to proof;

2. For reasonable attorneys' fees and costs of suit;

3. For a rescission of the Notice of Default and any subsequent Notice of Trustee sale

4. For such other and further relief as the court deems just and proper.

**As to the third cause of action for cancellation of trustee sale:**

1. Cancellation of any sale of Plaintiff's residence;

2. For a compensatory damage award according to proof;

3. For costs of suit;

4. For a rescission of the Notice of Default and any subsequent Notice of Trustee sale

5. For such other and further relief as the court deems just and proper.

**As to the fourth cause of action for unfair business practices**

1. For an order restraining Defendants from engaging in any further unfair business Practices of the type to be proven at the time of trial;

2. For a compensatory damage award according to proof;

3. For costs of suit;

4. For reasonable attorneys' fees;

5. For such other and further relief as the court deems just and proper.

DATED: March 31, 2010                    LAW OFFICES OF MOSES S. HALL,

BY:  _Moss S. Hall_____
                    MOSES S. HALL,
                    Attorney for Plaintiff,
                    IGNACIO SERRANO

**SECOND AMENDED COMPLAINT**

EXHIBIT 1

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

63.00

2007000646464 04:30pm 10/23/07
120 49 D11 20

0.00 0.00 0.00 0.00 57.00 0.00 0.00 0.00

Recording Requested By: Homecomings Financial

Return To:   Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis   MN   55423
**Loan Number:** 047-554924-2

Prepared By:   Homecomings Financial
4350 Von Karman Avenue, Suite 100
Newport Beach, CA 92660

*294445l*

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

MIN 100062604755492420

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   OCTOBER 15TH, 2007 together with all Riders to this document.
**(B) "Borrower"** is

IGNACIO SERRANO AND JOSEFINA SERRANO, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is   4109 WEST 5TH STREET, SANTA ANA, CA. 92703
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
Lender is a   LIMITED LIABILITY COMPANY
organized and existing under the laws of   DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        **Form 3005  1/01**
MFCA7770 (09/2005) / 047-554924-2
VMP  -6A(CA) (0207).01
Page 1 of 15        Initials: I. S.   J. S.   10/17/07
VMP Mortgage Forms, Inc.

Lender's address is  4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660
**(D) "Trustee"** is  ALLIANCE TITLE

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated OCTOBER 15TH, 2007
The Note states that Borrower owes Lender  TWO HUNDRED THIRTY FIVE THOUSAND AND NO/100                                                                            **Dollars**
(U.S. $   235,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       NOVEMBER 1ST, 2037        .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                          of ORANGE                                          :
     [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number:  933-53-053                        which currently has the address of
4109 WEST 5TH STREET UNIT # 53                                                          [Street]
SANTA ANA                                          [City], California 92703        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: I. S
J. S. 10-17-07  Form 3005  1/01

-6A(CA) (0207).01                        Page 3 of 15
MFCA7770 (09/2006) / 047-554924-2

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207).01
MFCA7770 (09/2006) / 047-554924-2
Page 7 of 15
Initials: _____
J.S. 10-17-07
Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.




**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _Z·S_

J. S. 10-17-07

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_10/17/07_

_Ignacio Serrano_ _____ (Seal)
                                        -Borrower
IGNACIO SERRANO


_Josefina Serrano  10-17-07_ ___ (Seal)
                                        -Borrower
JOSEFINA SERRANO


_____ (Seal)       _____ (Seal)
                     -Borrower                          -Borrower


_____ (Seal)       _____ (Seal)
                     -Borrower                          -Borrower


_____ (Seal)       _____ (Seal)
                     -Borrower                          -Borrower

State of California
County of _ORANGE_                                          } ss.

On _October 17th 2007_ before me, _Wanda M. Cooley Notary Public_ personally appeared _Ignacio Serrano and Josefina Serrano_

_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Wanda M. Cooley_
_Notary Public_                                            _____ (Seal)

WANDA M. COOLEY
Commission # 1631763
Notary Public · California
Kern County
My Comm. Expires Dec 4, 2008

-6A(CA) (0207).01

MFCA7770 (09/2006) / 047-554924-2

Page 15 of 15

Initials: _I.S_
_J.S. 10-17-07_

Form 3005   1/01

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

| NAME OF NOTARY: | WANDA M. Cauley |
| DATE COMMISSION EXPIRES: | DEC 4, 2008 |
| STATE WHERE BOND IS FILED: | CALIFORNIA |
| COUNTY WHERE BOND IS FILED: | KERN |
| COMMISSION NUMBER: | 1531763 |
| MANUFACTURER/VENDOR NO: | NNA1 |

PLACE OF EXECUTION:  SANTA ANA, CALIFORNIA

DATED:  10/22/07

BY: Joe Castro
FIRST AMERICAN TITLE INSURANCE COMPANY

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 15TH day of OCTOBER, 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)

(the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
4109 WEST 5TH STREET UNIT # 53
SANTA ANA, CA 92703

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
VILLAGE GARDENS HOA

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT   MFCD8054 (08/2006) / 047-554924-2
VMP-8R (0411)   Form 3140 1/01
Page 1 of 3   Initials: _I . S_
VMP Mortgage Solutions, Inc.  J. S, 10 - 17 - 07
(800)521-7291

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _Z.-S_

J.S. 10-17-06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

*Ignacio Serrano*     10/17/07
_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower
IGNACIO SERRANO

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

VMP-8R (0411)                    Page 3 of 3                    Form 3140 1/01
MFCD8054 (08/2006) / 047-554924-2



DESCRIPTION

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE **STATE OF CALIFORNIA, COUNTY OF ORANGE, CITY OF SANTA ANA,** AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED 1/82 INTEREST IN AND TO LOT 1 OF TRACT NO. 7997, IN THE CITY OF SANTA ANA, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 340, PAGE(S) 8 AND 9 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM UNITS 1 THROUGH 82 INCLUSIVE AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT "B" TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED MARCH 15, 1974 IN BOOK 11095 PAGE 246, OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

UNIT NO. 53-A AND 53-B, AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL 1 ABOVE.

933-53-053

EXHIBIT 2

RECORDING REQUESTED BY:

FIRST AMERICAN TITLE INSURANCE

WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

2008000480569 11:08am 10/17/08
105 49 N15 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

TS No. : GM-165855-C      Loan No.: 0475549242          SPACE ABOVE THIS LINE FOR RECORDERS USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $9,125.04 as of 10/15/2008, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

EXHIBIT
11
3/11/10
PENGAD 800-631-6989

TS NO.: GM-165855-C                    LOAN NO.: 0475549242

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember,  YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That  **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated   **10/15/2007** , executed by  **IGNACIO SERRANO AND JOSEFINA SERRANO, HUSBAND AND WIFE AS JOINT TENANTS** as Trustor, to secure certain obligations in favor of  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** as beneficiary, recorded **10/23/2007**, as Instrument No. **2007000646464**, in Book , Page ,  of Official Records in the Office of the Recorder of  **Orange** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of  **$235,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its servicing agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.

Dated:  10/15/2008

ETS Services, LLC AS AGENT FOR BENEFICIARY

BY: _____

Neda Cayton
TRUSTEE SALE OFFICER

**PROOF OF SERVICE**
**1013 a (3) CCP**

STATE OF CALIFORNIA       )
                          )     ss
COUNTY OF ORANGE          )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 2651 EAST CHAPMAN AVE., SUITE 110, FULLERTON, CA 92831.

On April 1, 2010, I served the foregoing documents described as **Second Amended Complaint** by placing a true and correct copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows:
SEE ATTACHED SERVICE LIST

/x/ I deposited such envelope in the mail at FULLERTON, California. The envelope was mailed with postage thereon fully prepaid.

/x/ I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Fullerton, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

// BY FACSIMILE: I sent a copy via facsimile transmission to the telefax number(s) indicated below. The facsimile machine I used complied with California Rules of the Court, Rule 2003 and no error was reported by machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission and it recorded as completed.

/ / BY PERSONAL SERVICE

Executed this 1rst day of April, 2010 at Fullerton, California

/X/ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/ / (Federal) I declare that I am an employee of a member of the bar of this court at whose direction the service was made.

Matthew Nietschke Declarant

**PROOF OF SERVICE**

1                            <u>Service List</u>

2    Deborah Yoon Jones
3    Elizabeth A. Fierman
     Adriene Plescia Lynch
4    Alston & Bird LLP
     333 South hope Street, Sixteenth Floor,
5    Los Angeles, California, 90071

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**